IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OSAMA M. ABUIRSHAID, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-1113 |
| | ) | |
| JEH JOHNSON, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this suit, a naturalization applicant seeks mandamus and injunctive relief against officials of the Department of Homeland Security ("DHS"), whom he alleges have unreasonably delayed and denied action on his naturalization application on unconstitutional grounds, including his nationality (Jordanian), ethnicity (Arab), and religion (Muslim). Defendants have moved to dismiss for lack of jurisdiction and for failure to state a claim. As the matter has been fully briefed and argued, it is now ripe for disposition. For the reasons stated here, defendants' motions must be granted both because plaintiff has failed to exhaust his administrative remedies and because there is no factual or legal basis for a writ of mandamus.

I.

Before setting forth the facts, it is useful to describe briefly the statutory context pertinent to the naturalization application process. Sections 1427 and 1429 of Title 8 provide that "[n]o person ... shall be naturalized unless," *inter alia*, (i) he has been lawfully admitted to the United States for permanent residence, and thereafter "resided

1

continuously ... within the United States for at least five years";[1] (ii) he has "resided continuously within the United States from the date of application [for naturalization] up to the time of admission to citizenship;" and (iii) during these statutory periods, he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. §§ 1427(a), 1429.

An alien seeking naturalization must first file with USCIS a Form N-400. *See* 8 U.S.C. § 1445(a); 8 C.F.R. § 316.4(a). USCIS then conducts an examination of the alien's application to determine, *inter alia*, whether the application meets the residency requirements. *See* 8 U.S.C. § 1446(b). During the examination, USCIS (i) must obtain the results of an FBI background check on the applicant, and (ii) may issue subpoenas for documents and testimony from the applicant and third parties who may possess pertinent information. *See* 8 U.S.C. § 1446(b). Ultimately, USCIS "shall make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(d); 8 C.F.R. §§ 335.3(a), 336.1.

If USCIS denies a naturalization application on an initial determination, the applicant may, within 30 days of the determination, request another hearing. 8 U.S.C. § 1447(a); *see also* 8 C.F.R. §§ 316.14(b)(2); 336.2(a). This hearing serves as an administrative appeal of USCIS's initial determination and, as such, must be conducted

---

[1] Importantly, "[w]hether the applicant was actually admitted to the United States or had his ... status adjusted to that of a permanent resident is not dispositive"; rather, in order to satisfy the permanent resident requirement, the applicant must establish that the government's previous decision substantively "'complied with the governing law.'" *Nesari v. Taylor*, 806 F. Supp.2d 848, 865 (E.D. Va. 2011) (quoting *De La Rosa v. DHS*, 489 F.3d 551, 554 (2d Cir. 2007)).

by an independent officer,[2] who may "receive new evidence or take such additional evidence as [he] may [deem] relevant to the applicant's eligibility for naturalization." *Id.* The applicant has the right to introduce new evidence in support of his application and in opposition to the findings made in USCIS's initial determination. *Id.* Ultimately, the USCIS hearing officer must issue a new decision that either "affirm[s] the findings and determination of the original examining officer or re-determine[s] the original decision in whole or in part." *Id.*

An applicant is entitled to judicial review at two specific points during the naturalization application process:

> (i) if USCIS "fail[s] to make a determination" as to the initial decision "before the end of the 120-day period after the date on which the examination is conducted," the applicant may file a petition in federal district court, 8 U.S.C. § 1447(b);[3]
>
> (ii) if *after* an administrative appeal hearing, USCIS affirms its initial determination to deny a naturalization application, the applicant may seek judicial review of that denial in an appropriate district court, which will engage in de novo review of USCIS's denial. 8 U.S.C. § 1421(c).

## II.

---

[2] Specifically, USCIS regulations mandate that the administrative appeal must be heard by a USCIS official "other than the officer who conducted the original examination or who rendered [the] determination upon which the hearing is based, and who is classified at a grade level equal to or higher than the grade level of the examining officer." 8 C.F.R. § 336.2(b).

[3] Importantly, judicial review at this point in the naturalization application process is available only if the applicant's petition is filed before USCIS issues its initial determination on the application. On the filing of such a petition, the district court has jurisdiction over the application and may either decide whether the applicant is entitled to naturalization or remand the matter back to USCIS for further administrative proceedings. *See Etape v. Chertoff*, 497 F.3d 379, 388 (4th Cir. 2007).

The pertinent facts may be succinctly stated.

Plaintiff Osama Abuirshaid is a citizen of Jordan who seeks to become a naturalized citizen of the United States.

Defendants are:

- Jeh Johnson, Secretary of DHS;

- Leon Rodriguez, Director of the United States Citizenship & Immigration Services ("USCIS"), an agency within DHS;

- Sarah Taylor, District Director of USCIS;

- Kimberly Zanotti, Field Office Director of USCIS; and

- James Comey, Director of Federal Bureau of Investigations ("FBI").

In May 2000, after marrying a United States citizen, plaintiff filed an application with the former Immigration and Naturalization Service ("INS") seeking Legal Permanent Resident ("LPR") status. The INS approved plaintiff's application in February 2002, adjusting plaintiff's alien status to LPR.

On June 30, 2006, plaintiff applied for naturalization by filing a Form N-400. USCIS undertook a comprehensive examination of plaintiff's eligibility, interviewing him several times between October 2008, and June 2015. On August 10, 2015, USCIS issued an initial determination on plaintiff's application, concluding that plaintiff was not eligible for naturalization because he omitted from his earlier LPR application certain groups with which he was affiliated, and that such information would have been material to whether the former INS would have exercised its discretion to afford him that status.

Pl. Ex. 1, USCIS Initial Determination.[4] Specifically, USCIS concluded that plaintiff omitted certain information from his May 2000 adjustment of status application because he did not list his then-existing affiliation with certain political groups, namely the Islamic Association for Palestine ("IAP") and the United Association for Studies and Research ("UASR"). But during the naturalization application process, plaintiff revealed his affiliation with these political groups. Specifically, he revealed that he had become involved with IAP in approximately 1997 or 1998 and UASR in January 2000. USCIS determined that these omissions from plaintiff's adjustment application precluded plaintiff from establishing that he had previously been lawfully admitted to permanent residence, a requirement for naturalization. *See id.* On September 10, 2015, plaintiff exercised his right to pursue an administrative appeal of USCIS's determination that his failure to reveal his affiliation with the political groups in his adjustment application barred him from consideration for naturalization. USCIS has now scheduled an administrative appeal hearing for March 3, 2016.

On August 31, 2015, prior to filing his administrative appeal, defendant filed his complaint here, which was titled "emergency injunction to prohibit defendants from violating plaintiff's constitutional rights, and petition for hearing on naturalization application." Compl. In his complaint, plaintiff explained that "[t]his action is brought to compel [d]efendants to appear before this Court before September 11, 2015," because "[p]laintiff has until September 12, 2015, to file an N336 administrative appeal of this

---

[4] In reaching this conclusion, USCIS cited *Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 318 (4th Cir. 2013) (holding that when an alien makes a material misrepresentation in an adjustment application—whether intentional or not—he does "not satisfy the legal requirements for adjusting to LPR status").

denial action." *Id.* ¶ 1.[5] The complaint also seeks judicial review of USCIS's initial determination on plaintiff's naturalization application on the ground that "[i]t would be futile" for plaintiff to exhaust his available administrative remedies." *Id.* ¶ 2. Plaintiff further characterizes the pleading "as a writ in the nature of mandamus to rectify" USCIS's erroneous initial determination on his naturalization application. *Id.* ¶ 3. Furthermore, plaintiff seeks "to enjoin [d]efendants from violating [his] ... rights" under the Due Process and Equal Protection clauses of the Constitution, as well as a "declaratory judgment" with respect to those rights. *Id.* ¶ 4, 8-9. Distilled to its essence, the complaint alleges that USCIS has denied plaintiff's application for naturalization unlawfully by "utilizing a covert agency program known as 'Controlled Application Review and Resolution Program' (CARRP) to blacklist plaintiff as a 'national security concern' based on lawful religious activity, national origins and innocuous associations." *Id.* ¶ 2.

Defendants have moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim.

### III.

The threshold issue presented is whether jurisdiction over plaintiff's complaint is lacking because plaintiff failed to exhaust his administrative remedies. Plaintiff concedes, as he must, that he did not exhaust his administrative remedies. Yet, plaintiff seeks to

---

[5] Because September 11, 2015, has passed, and plaintiff has now filed a request for an administrative appeal hearing, plaintiff's request to compel defendants to appear before September 11, 2015, is moot because the emergency relief sought is "no longer live." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("[T]he requested personal interest that must exist at the commencement of the litigation (standing) [must continue] throughout the litigation.") (internal quotation marks and citation omitted).

avoid the exhaustion requirement by arguing that: (i) it would be futile for him to exhaust his administrative remedies, and (ii) his constitutional claims are not required to be exhausted. Both arguments fail.

### A.

There can be no doubt that exhaustion of administrative remedies is required as a prerequisite for Article III judicial review. In the words of the Fourth Circuit, it is a "long settled rule of judicial administration" that "no one is entitled to judicial relief for supposed threatened injury until the prescribed administrative remedy has been exhausted." *Thetford Props. IV L.P. v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 448 (4th Cir. 1990). With respect to USCIS's adjudication of a naturalization application, Congress has clearly mandated that an alien must fully exhaust the administrative appeal process before proceeding to federal court. *See* 8 U.S.C. § 1421(c). Specifically, § 1421(c) states that: "[a] person whose application for naturalization ... is denied, *after [an administrative appeal] hearing before an immigration officer under [§] 1447(a) of this Title,* may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). Here, it is undisputed that plaintiff has not exhausted his administrative remedies, as his administrative appeal is pending. Nevertheless, plaintiff argues that judicial review is appropriate at this juncture because his administrative appeal is futile.

Plaintiff's futility argument runs aground and fails, as the § 1421(c) exhaustion requirement does not admit of a futility exception. This is so because Congress, in establishing the § 1421(c) exhaustion requirement, did not include a futility exception, and as the Supreme Court has explained in another context, when an exhaustion

requirement is a statutory requirement—rather than a judicially-imposed requirement—a court should not "read futility or other exceptions" into the statute. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (refusing to read a futility exception into the exhaustion requirement set forth in 42 U.S.C. § 1997e). Although the Fourth Circuit has not squarely addressed whether a futility exception exists with respect to the § 1421(c) administrative exhaustion requirement, other circuits have done so. The Second and Eleventh Circuits have held that there is no futility exception to § 1421(c) because, as noted here, Congress expressly established the administrative exhaustion requirement and did not include a futility exception.[6] The Ninth Circuit, by contrast, has reached a different result, concluding that there is a futility exception. *Eche v. Holder*, 694 F.3d 1026, 1028 (9th Cir. 2012). Specifically, the Ninth Circuit reasoned that because § 1421(c) provides that a denied applicant "'after a hearing before an immigration officer ... *may* seek review of such denial before the United States district court,'" it follows that "the statutory provision for review of the agency's denial of naturalization is permissive, rather than mandatory," and hence allows exceptions to exhaustion such as futility. *Id.* (quoting 8 U.S.C. § 1421(c)).

A careful reading of the decisions reveals that the Second and Eleventh Circuits have reached the correct result, whereas the Ninth Circuit misreads the statutory text. Indeed, contrary to the Ninth Circuit's interpretation of the statute, § 1421(c) uses permissive language only with respect to the availability of Article III judicial review

---

[6] *See, e.g., Escaler v. USCIS*, 582 F.3d 288, 292 (2d Cir. 2009) ("When, as here [in the context of § 1421(c)], the exhaustion requirement is established by statute ... the requirement is "mandatory, and courts are not free to dispense with [it]."); *Huang v. Secretary*, 468 F. App'x, 932, 935 (11th Cir. 2012) ("This requirement is a statutory exhaustion requirement, and the district court was not authorized to read an exception, including one based on futility or the USCIS's actions, into that requirement.").

("may seek review of such denial before the United States district court"),[7] not with respect to the exhaustion requirement ("after a hearing before an immigration officer"). 8 U.S.C. § 1421(c). In other words, the exhaustion requirement is cast in absolute language. Thus, there is no textual basis for concluding that the § 1421(c) exhaustion requirement admits of a futility exception. Moreover, unlike the Second and Eleventh Circuits' interpretation, the Ninth Circuit's interpretation runs counter to the teaching of *Booth*. Accordingly, because Congress has mandated that a naturalization applicant must exhaust his administrative remedies before seeking judicial review, it is not appropriate for a court to "read futility or other exceptions" into § 1421(c). *Booth*, 532 U.S. at 741 n.6.

Moreover, even assuming, *arguendo*, that § 1421(c) admits of a futility exception, there is no sound reason to conclude that it would be futile for plaintiff to exhaust his administrative remedies in this case. In this respect, it is settled in this circuit that a plaintiff can establish futility only by making a "clear showing that an administrative agency has taken a hard and fast position that makes a ruling a certainty." *Thetford Props.*, 907 F.2d at 450. This threshold is undoubtedly high, but as the Fourth Circuit has noted, a lower threshold "would allow the futility exception to swallow the rule." *Id.*

Here, plaintiff has offered no evidence that USCIS "has taken a hard and fast position" on plaintiff's naturalization application such that the result of an administrative appeal hearing conducted by an independent officer is a "certainty." *Id.* Rather, plaintiff contends that the circumstances of his application process are unusual insofar as (i) plaintiff was interviewed by a senior officer from Washington, D.C., rather than an

---

[7] It makes perfect sense that the availability of judicial review is cast in permissive terms because, as with all agency decision-making, a disappointed applicant is not *required* to seek further review of agency's adverse decision if he has no interest in doing so.

officer from the local office, (ii) two officers were present during plaintiff' hearing, and (iii) USCIS did not make the initial determination until nine years after the process began. At oral argument, plaintiff conceded that there is nothing improper or unlawful about these circumstances; rather, plaintiff simply argues that the circumstances are irregular. But irregularity is not a ground for futility. Thus, even assuming the availability of the futility exception, it does not apply here because plaintiff has not argued—nor can he do so—that the circumstances of his naturalization application process provide any indication that USCIS "has taken a hard and fast position that makes a ruling a certainty." *Thetford Props.*, 907 F.2d at 450.

In sum, plaintiff is not entitled to judicial review of his naturalization application process at this juncture because there can be no futility exception where, as here, Congress has expressly established an administrative exhaustion requirement. Moreover, even if § 1421(c) admitted of a futility exception, plaintiff has provided no sound legal or factual basis to establish futility in this case.

### B.

Plaintiff next argues that the § 1421(c) exhaustion requirement does not apply with respect to his constitutional claims, which he contends need not be exhausted. As defendants correctly point out, this argument is contrary to Fourth Circuit precedent.

In this respect, the Fourth Circuit has made clear that there is a "consistent and unambiguous line of cases rejecting the contention that constitutional claims should be exempt from the exhaustion requirement." *Nationsbank Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999). Indeed, "exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity of deciding constitutional questions."

*Thetford Props.*, 907 F.2d at 448. Moreover, where, as here, Congress has created a particularized and comprehensive scheme for judicial and administrative review in a given context, the Supreme Court has held that any challenge to either the scheme itself or the manner by which the agency is administering that scheme must be addressed specifically through the avenues for judicial review that Congress provided. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994).

Plaintiff's argument that constitutional claims are exempt from the exhaustion requirement is based solely on an older district court case in which a prisoner was not required to exhaust his administrative remedies before bringing a *Bivens* action to recover damages for violations to his constitutional rights. *Abdul-Khabir v. Lichtenberger*, 518 F. Supp. 673, 675 (E.D. Va. 1981). This decision is neither persuasive nor controlling; indeed, *Abdul-Khabir* is no longer applicable law, as the case was decided before the Prison Litigation Reform Act of 1995 ("PLRA") mandated an administrative remedy exhaustion requirement for prisoners.[8]

It is worth noting that the conclusion reached here—dismissal for failure to exhaust—is not a decision on the merits of plaintiff's claims. To the contrary, plaintiff will be given a chance to air all his claims on administrative appeal, and if necessary,

---

[8] Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted ... ." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81 (2006) (holding that the PLRA exhaustion requirement is not left to the discretion of the courts but is mandatory pursuant to § 1997e).

plaintiff may seek judicial review pursuant to § 1421(c) *after* the administrative appeal has been resolved.[9]

## IV.

Finally, it is necessary to address whether plaintiff's request for a writ of mandamus states a valid claim. It does not.

A district court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Yet, where, as here, Congress has expressly limited jurisdiction by a specific statute, namely 8 U.S.C. § 1447(b), "general grants of jurisdiction," such as § 1361, "may not be relied upon to expand [the] specific statute." *Danilov v. Auguirre*, 370 F. Supp.2d 441, 443, 445 (E.D. Va. 2005).[10] Thus, plaintiff's invocation of § 1361, which is a general grant of jurisdiction, "is to no avail," as "this matter is controlled by the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b)." *Id.* Accordingly, plaintiff's claim for a writ of mandamus is properly dismissed for lack of jurisdiction.

Moreover, even assuming, *arguendo*, that § 1447(b) does not trump § 1361, a writ of mandamus is not appropriate here. A writ of mandamus is appropriate only "where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2)

---

[9] Defendants further contend that the constitutional claims should be dismissed for failure to state a claim. This issue need not be reached here, as the constitutional claims are properly dismissed for lack of subject matter jurisdiction.

[10] *See also United States v. Fausto*, 484 U.S. 439, 448-49 (1988) (providing that where a specific statute provides subject matter jurisdiction, general federal question jurisdiction is not applicable); *Pulido v. Bennett*, 848 F.2d 880, 886 (8th Cir. 1988) (stating that "[i]t is well established that when a statute specifically provides for exclusive jurisdiction in one court, the specific grant of jurisdiction takes precedence over a general grant of jurisdiction") (citations omitted).

12

the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). Put differently, "[t]he mandamus statute ... only provides a remedy to a plaintiff who has exhausted all other avenues of relief and only then if the defendant owes him a clear, non-discretionary duty." *Danilov*, 370 F. Supp.2d at 445. Here, a writ of mandamus is not appropriate because an initial, albeit allegedly unreasonably delayed, USCIS naturalization determination does not amount to an extraordinary circumstance involving the deprivation of a "clear, non-discretionary duty" that is the essence of mandamus relief. *See id.* Moreover, the existence of another adequate remedy, namely administrative appeal, precludes mandamus relief. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

V.

For the reasons stated here, defendants' motions to dismiss must be granted, and plaintiff's complaint must be dismissed without prejudice.

An appropriate Order will issue.

Alexandria, Virginia
December 21, 2015

/s/
———————————————
T. S. Ellis, III
United States District Judge